## THE O. L. HALENBECK.

(District Court, S. D. New York. December 14, 1901.)

COLLISION—TUGS MANEUVERING NEAR PIER—ABSENCE OF LOOKOUTS.

A tug was backing out from a slip in East river with a scow on a line, when, drifting upstream slightly with the flood tide, she came in collision with another tug which was maneuvering in the vicinity, and was at the time headed down the river, and going ahead slightly. Neither tug had a lookout. The first tug took no precautions whatever with respect to any other vessels as she moved out, and the second tug made no effort to avoid the collision, which she could readily have done had she been vigilant. *Held*, that the tugs were both in fault.

In Admiralty. Suit for collision.

Foley & Wray, for libelants.

Carpenter & Park, for claimant.

ADAMS, District Judge. This action arose out of a collision which took place between the libelant's steam tug Alexander Barclay and the steam tug Halenbeck on the 18th of June, 1900, about 8 o'clock a. m., in the vicinity of pier 4, East river. The Barclay had been lying overnight between piers 3 and 4, and started out in the morning, shortly before 8 o'clock, to tow a scow loaded with stone to the upper side of pier 5, East river. The scow was lying between piers 3 and 4 (old numbers), outside of a barge which was lying next to the westward side of old pier 4. The tug ran a line from her stem post, or nigger head, to the stern of the scow, and backed out into the river, giving a headway to the scow which was sufficient, when the tug stopped, to drag the latter around on the port side of the scow into the position the master of the tug intended to assume for the purpose of towing the scow to her destination. The tide was flood. As the vessels moved out of the slip, its tendency was to set them up the river, and before the tug had obtained control of the scow the collision occurred; the stem of the Halenbeck striking the port side of the Barclay, and causing a wound which shortly resulted in the sinking of the latter. The Halenbeck had been lying at the end of old pier 4, or maneuvering in its vicinity, before the collision, and other tugs were also there. The Barclay had no lookout, and took no precautions whatever with respect to any other vessels as she moved out. The Halenbeck was not discovered by her until the vessels were in close proximity, and she then did nothing to avoid the collision. I have no hesitation in finding her in fault, under the circumstances. The principal difficulty in the case arises in determining whether the Halenbeck should also be held in fault. Her contention is that she had been fast, with her bow to the westward, to another tug lying outside of a third tug, which was fastened to the end of old pier 4, and had moved slightly away to permit the tug next to her to leave, intending to make fast to the tug next to the pier, and that as the Barclay and her tow came out of the slip she was helpless to avoid the collision, as her stern was so close to the westward side of new pier 4 she had no room to maneuver, and could not escape from the Barclay when the tide set the latter and

her tow towards her. If this was the situation, the Halenbeck should be exonerated. The Barclay, on the other hand, contends that the Halenbeck had been lying stern to the westward, and, instead of remaining in the vicinity of old pier 4, had left that pier a little time before, and gone out in the river beyond and above new pier 4, where she turned around so as to head to the tide, and was coming back, but was still partly outside of new pier 4 when the collision occurred, and that she was negligent in her navigation when she was in a position in which she could have avoided the Barclay. It is impossible to reconcile the testimony. About the same number of witnesses on each side testify positively in support of the respective contentions. I am inclined to accept the libelant's contention in this respect, particularly as the length of the Halenbeck (about 110 feet) renders it improbable that her version can be correct. New pier 4 extended 145 feet further out in the river than old pier 4. Old pier 4 was 40 feet wide, and distant 33 feet from new pier 4, so that the westward side of old pier 4 was 73 feet from the westward side of new pier 4. The barge alongside of which the scow had been lying was 32 feet wide. The Halenbeck, with her stern 8 or 10 feet from the westward side of new pier 4, if lying parallel, or nearly so, with the end of old pier 4, would have extended about 15 feet below the line of the westward side of the barge. The scow, in sagging up towards new pier 4 with the tide, necessarily encroached upon the space of 105 feet mentioned. It is probable, and the testimony indicates, that the scow sagged up at least as much as half the width of the barge; and, with the Barclay on her side next to new pier 4, it was practically impossible for the Halenbeck to have been at the time between the Barclay and the pier, unless the collision happened very near the end of old pier 4, which the testimony does not show. The pilot of the Halenbeck, who was in charge at the time, said his tug was heading to the westward, "a little bit in towards the pier," and was about 120 feet away from old pier 4 at the time of the collision. I conclude, therefore, that the Halenbeck was approaching from the outside of a pile driver which lay at the end of new pier 4. She had no lookout, and it is obvious that she was in fault in not seeing that the Barclay was proceeding without regard to her, and that a collision would occur if precautions were not taken by her to avoid it, which she could easily have employed. The testimony indicates that she was going ahead slightly at the time of the collision, when, if she had been vigilant, there would have been no difficulty in stopping her headway, or in backing away from the Barclay if necessary. Both vessels must be held in fault.

Decree for the libelant for half damages.